IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JENNIFER KRANSKY,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF VETERANS AFFAIRS AND SECRETARY OF THE DEPARTMENT OF VETERANS AFFAIRS DENIS RICHARD MCDONOUGH, in his Official Capacity, RALPH GIGLIOTTI, DR. JUDY HAYMAN, JILL THOLT, LORI TURNER, STEPHEN JACKSON, AND DAVID HUNTOON, all in their Official and Individual Capacities,<br><br>　　　　　　　Defendants. | CV 22-138-BLG-SPW<br><br><br>ORDER |

Before the Court is Defendants United States Department of Veterans Affairs and Secretary of the Department of Veterans Affairs Denis Richard McDonough, *et al.*'s Motion to Dismiss Plaintiff Jennifer Kransky's Second Amended Complaint ("Complaint"). (Doc. 31). Defendants ask the Court to dismiss Plaintiff's suit pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (*Id.*). For the following reasons, the Court finds that it lacks jurisdiction to consider the matter and that dismissal is proper.

## I.    Background

### A.    *Veterans' Benefits Act*

Congress vested the Department of Veterans Affairs ("the VA") with the power to employ health care professionals, including registered nurses, as "necessary for health care of veterans." 38 U.S.C. § 7401. Such health care professionals are appointed "without regard to civil-service requirements." *Id.* § 7403(a)(1). They therefore are not covered by the provisions of the Civil Service Reform Act ("CSRA"), which establishes a "remedial scheme through which federal employees can challenge their supervisor's 'prohibited personnel practices,'" including discharges. 5 U.S.C. § 7511(b)(10); *Orsay v. U.S. Dep't of Just.*, 289 F.3d 1125, 1128 (9th Cir. 2002), *abrogated on other grounds by Millbrook v. United States*, 569 U.S. 50 (2013) (quoting 5 U.S.C. § 2302). Rather, nurses hired by the VA are governed by the Veterans' Benefits Act ("VBA"), Title 38 of the United States Code. The parties agree that Plaintiff was employed as a nurse with the VA pursuant to 38 U.S.C. § 7401(1). (Doc. 32 at 9; Doc. 35 at 18). Under the VBA, if the VA takes "an adverse action" against a § 7401(1) employee based on conduct or performance—including discharging an employee—the disciplinary procedures prescribed in 38 U.S.C. § 7461 apply.

Two types of disciplinary procedures exist under § 7461. If the VA's case "involves or includes a question of professional conduct or competence in which a

major adverse action was taken," the employee may appeal the VA's decision to a Disciplinary Appeals Board ("DAB"). 38 U.S.C. § 7461(b)(1). A major adverse action includes discharge, and a question of professional conduct or competence is a question involving either direct patient care or clinical competence. *Id.* § 7461(c)(2)-(3). The DAB has exclusive jurisdiction to review such cases. *Id.* § 7462(a)(1).

When a DAB receives an appeal of an adverse decision taken by the VA against a § 7401(1) employee, it first must determine whether the case is properly before it, meaning whether the case involves a major adverse action and a question of professional conduct or competence. *Id.* § 7462(c)(1). Only upon determining that the case is properly in front of the DAB does it consider the merits of the VA's decision. *Id.* If the DAB reaches the merits of a case, it must provide the employee with a hearing and render a decision within 45 days of the hearing. *Id.* § 7462(c)(3)-(4). Based on its consideration of the evidence, the DAB may sustain, dismiss, or sustain in part and dismiss in part each charge against the employee. *Id.* § 7462(c)(2). Within 90 days of the DAB's decision, the Secretary of the VA then must implement the decision and order reinstatement, back pay, or any other remedies the DAB found appropriate. *Id.* § 7462(d)(1).

"A § 7401(1) employee adversely affected by a final order or decision of a [DAB] (as reviewed by the Secretary) may obtain judicial review of the order or

decision." *Id.* § 7462(f)(1). The court "shall review the record and hold unlawful and set aside any agency action, finding, or conclusion found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) obtained without procedures required by law, rule, or regulation having been followed; or (C) unsupported by substantial evidence." *Id.* § 7462(f)(2).

All other types of adverse employment actions—*i.e.* those that do not involve a major adverse action or a question of professional conduct or competence—are governed by the VA's grievance procedures in § 7463. *Id.* § 7461(b)(2). Under the VA's grievance procedures, the aggrieved employee is entitled to notice and an opportunity to respond to the charges. *Id.* § 7463(c)(1). The employee also has the right to a formal review of the decision by an impartial examiner within the VA, to a prompt report of the findings and recommendations from the impartial examiner, to a prompt review of the examiner's findings and recommendations by an official of a higher level than the official who originally made the decision involving the employee, and to legal representation. *Id.* § 7463(d), (e). The statute does not provide for review by a federal court.

B.    *Statement of Facts*

Plaintiff was hired as a nurse with the VA pursuant to § 7401(1) on July 25, 2004. (Doc. 22 at 1; Doc. 34-1). She worked at the VA Community Living Center

("CLC") in Miles City.  (Doc. 29 at 6).  In 2019, she was promoted to Nurse Manager for the CLC.  (*Id.*).

On December 7, 2021, the then-activities director of the CLC reported to the VA an instance of abuse of a veteran at the CLC.  (*Id.* at 7).  According to Plaintiff, the activities director never witnessed any of the events she reported.  (*Id.*).  In response, the VA assigned VA Officer Colin Norris to investigate.  (*Id.*).  Plaintiff claims Officer Norris interviewed the allegedly abused veteran, who said a nurse berated him but did not identify Plaintiff as that nurse, and a number of people who did not have personal knowledge of the allegations.  (*Id.* at 8).  Plaintiff asserts that Officer Norris did not interview the nurses present for the alleged abuse.  (*Id.*).  Officer Norris did not finish his investigation because the Office of Inspector General took over.  (*Id.*).  Plaintiff has not been given a copy of the Office of Inspector General's report.  (*Id.* at 9).

On January 13, 2022, Dr. Judy Hayman, the executive director of the Montana VA Health Care System, appointed three people to an Administrative Investigative Board ("AIB") to investigate the abuse.  (Doc. 22 at 2).  The AIB did not recommend terminating Plaintiff, though Plaintiff nevertheless contends that the AIB investigation was defective.  (Doc. 29 at 9-10).

On June 1, 2022, Jill Tholt, Associate Chief Nurse Inpatient/Specialty Care, sent a letter to Plaintiff recommending her termination.  (Doc. 34-2).  The letter

charged her with "Conduct Unbecoming of a Federal Employee," based on six

incidents:

- On or about December 7, 2021, Plaintiff failed to ensure the patient "was treated with respect and dignity when [she] shook [her] finger in his face and yelled at him."
- On or about December 7, 2021, Plaintiff was present while the patient asked to be returned to his room but was left in the hallway in his wheelchair with a portable oxygen tank. Plaintiff "failed to ensure that the patient was treated with respect and dignity."
- On or about December 7, 2021, Plaintiff failed to ensure the patient was treated with respect and dignity by demanding that he apologize to several nurses.
- On or about December 7, 2021, Plaintiff was present when a nurse responded unprofessionally to another nurse who asked if she needed help caring for the patient. Plaintiff failed to ensure that the nurse offering help was treated professionally and respectfully.
- Between about August 6, 2020, and December 7, 2021, Plaintiff "acted unprofessionally by making Nicole Chavez feel cornered and raising [her] voice at her on at least one occasion."
- Between about February 8, 2018 and on or about February 9, 2022, Plaintiff failed to ensure a patient was treated with respect and dignity when she shook her finger in his face and yelled at him because he had become mad at another patient.

(*Id.* at 1-2). Tholt characterized these incidents as "egregious" and having

"negatively impacted [Tholt's] confidence in [Plaintiff's] integrity and ability to

maintain the substantial trust placed in [her] as Nurse Manager" at the CLC. (*Id.* at

2). The letter notified Plaintiff that she had the right to respond to Tholt's letter

within seven business days.

On June 22, 2022, having reviewed Plaintiff's reply, the character statements

filed on her behalf, and other evidence, Dr. Hayman accepted Tholt's

recommendation for termination. (Doc. 35-1). The letter informed Plaintiff that

she had the right to appeal the decision to the DAB because the reasons for her

discharge involved a question of professional conduct or competence, pursuant to

38 U.S.C. § 7462. (*Id.* at 3).

Plaintiff appealed to the DAB. On August 11, 2022, the DAB determined

that it did not have jurisdiction to consider Plaintiff's appeal because though the

VA had taken a major adverse action against her, the charge upon which the action

was based did not involve a question of professional conduct or competence.

(Doc. 35-2). Accordingly, Plaintiff did not have a right to appeal her discharge to

the DAB. (*Id.*). However, the DAB explained she was entitled to challenge her

discharge through the VA's grievance procedures. (*Id.*). Dr. Hayman provided

Plaintiff with the grievance procedures the same day. (Doc. 35-3).

Plaintiff sent Dr. Hayman her grievance and request for a hearing on August

23, 2022. (Doc. 35-4). Plaintiff argued that the allegations made against her did

not amount to good cause and/or were not supported by the evidence. (*Id.* at 1-8).

Ralph Gigliotti, the medical director for the VA's Rocky Mountain Region,

appointed Lori Turner as the grievance examiner, and a grievance hearing was held

on October 27, 2022. (Docs. 35-7, 35-12; Doc. 29 at 13). At the hearing, Plaintiff

testified about her version of the events outlined in the allegations in order to

correct what Plaintiff perceived as errors in the administrative record. (Doc. 35-7

at 1-27).  Denise Singleton, a staff nurse at the CLC, also testified about the

December 7, 2021, incident, and Officer Norris testified about his investigation.

(Doc. 35-7 at 27-36).  Plaintiff alleges the hearing was improper because Turner

would not allow most of Plaintiff's witnesses to testify and rejected a number of

Plaintiff's exhibits.  (Docs. 29 at 13; 35-9; 39-10).

    Turner provided Gigliotti with Findings and Recommendations that

recommended that Plaintiff's termination be affirmed.  (Doc. 35-13).  Gigliotti

accepted the recommendation on November 23, 2022.  (Doc. 35-14).

    Plaintiff sued Defendants in this Court on December 8, 2022, to challenge

her discharge and recover damages.  (Doc. 1).  Count I seeks judicial review of

Plaintiff's termination pursuant to the Court's "authority to review actions of

administrative agencies"; Count II alleges due process violations under the

Montana and U.S. constitutions; Counts III and VI allege negligence and wrongful

discharge under the Federal Tort Claims Act ("FTCA"); and Counts IV and V

allege defamation and negligent/intentional infliction of emotional distress under

state law.[1]  (Doc. 29 at 5-18).  She seeks a court order holding unlawful the VA's

---

[1] Under the FTCA, the United States is liable for the wrongful acts of federal employees in the same manner as a private person would be liable for those acts. 28 U.S.C. § 2674. Montana's Wrongful Discharge from Employment Act, Mont. Code Ann. §§ 39-2-904, 39-2-905, ("WDEA") provides the exclusive remedy for wrongful conduct in terminating employees. Therefore, because a private individual could not escape liability in Montana under the WDEA for their wrongful acts, the United States cannot escape liability for Plaintiff's wrongful discharge claim (Count VI) if the VBA does not preclude her FTCA claims. *See Wilhite v.*

decision to terminate her and setting aside her termination as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by the evidence. (*Id.* at 19). She also seeks backpay, compensatory and other damages provided by law, punitive damages, and attorney fees. (*Id.*).

The instant motion to dismiss challenges her second amended complaint. (Docs. 29, 31).

## II.     Legal Standard

Under Rule 12(b)(1), a party may move to dismiss an action for lack of subject matter jurisdiction. The party seeking to invoke the Court's jurisdiction has the burden to establish it. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (internal citation omitted). The Court also may hear evidence and resolve factual disputes where necessary. *Id.*

//

//

---

*United States*, CV 19-102-BLG-SPW, 2020 WL 5105434, at *1 (D. Mont. Aug. 31, 2020) (adopting findings and recommendations).

## III.  Analysis

The federal government and its agencies are immune from suit unless the government waives its immunity and consents to being sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  "'Consequently, a person attempting to sue a federal agency or officer must demonstrate that the claim being asserted is covered by a specific statutory authorization to sue the United States[.]'" *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3655 (3d ed. 1998)).[2]  "The terms of consent to be sued may not be inferred, but must be unequivocally expressed[.]" *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (internal citation and quotation omitted).

Where sovereign immunity is not waived, a case may be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).  "The party asserting subject matter jurisdiction has the burden of proving its existence, *i.e.* that immunity does not bar the suit." *Id.* (internal citation and quotation omitted).

Here, Plaintiff predicates subject matter jurisdiction on (1) 28 U.S.C. § 1331, (2) "this Court's authority to review actions of administrative agencies of the

---

[2] The current version of § 3655 of *Federal Practice and Procedure* contains identical language. 14 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 3655 (4th ed. 2023).

government of the United States, and to grant injunctive relief against officials of federal agencies," (3) the Court's authority to review decisions of the DAB under 28 U.S.C. § 7462, (4) the FTCA upon the end of the six-month administrative period to review the tort claims, and (5) 28 U.S.C. § 1367(a) for supplemental jurisdiction over her state tort claims (Counts IV and V). (Doc. 29 at 4).

Defendants disagree, arguing that none of the statutes cited by Plaintiff provide the Court subject matter jurisdiction. (Doc. 32 at 14). As for Plaintiff's claims for judicial review (Count I) and wrongful discharge (Count VI), Defendants assert that the VBA precludes jurisdiction under 28 U.S.C. § 1331 and does not provide its own sovereign immunity waiver. (*Id.*). As for Plaintiff's tort claims, Defendants contend that Plaintiff has not established subject matter jurisdiction under the FTCA. (*Id.*). As for the federal constitutional claims, Plaintiff's claims are impermissible *Bivens* claims, are precluded by the VBA, and/or are not colorable under the law, so jurisdiction over her constitutional law claims does not exist under 28 U.S.C. § 1331. (*Id.* at 14-15). Lastly, Defendant asserts that Plaintiff has not proven that a federal agency or agents can be held liable for violations of the Montana Constitution. (*Id.* at 22).

A.    *State Constitutional Claims*

The Court finds that Plaintiff cannot bring a claim for a violation of state constitutional rights in federal court because the Montana Constitution does not

bind the United States to upholding the rights conferred onto Plaintiff by the

Montana Constitution. *Paulson v. City of San Diego*, 475 F.3d 1047, 1048 (9th

Cir. 2007) ("the United States is not subject to state constitutional authority.").

Thus, the Montana Constitution cannot be enforced against the United States, and

the Court lacks jurisdiction over such claims.  The Court dismisses Count II as to

the alleged violations of the Montana Constitution.

  B.  *Waiver of Sovereign Immunity Under § 7462*

  As for Plaintiff's federal claims, Plaintiff must show that the United States

has waived sovereign immunity to defeat Defendants' motion to dismiss.  Plaintiff

first asserts jurisdiction under 28 U.S.C. § 7462 of the VBA.  The Court finds

Plaintiff has not alleged facts constituting a claim under § 7462.

  As explained, a § 7401(1) employee must appeal a major adverse action by

the VA involving a question of professional conduct or competence to a DAB

under § 7462.  Section 7462 provides for judicial review of a DAB's decision.  If a

case does not involve a major adverse action or a question of professional conduct

or competence, a § 7401(1) employee can only appeal the VA's decision under the

VA's grievance procedures outlined in § 7463.  Section 7463 does not provide for

judicial review of the decision.

  The parties disagree whether Plaintiff appeals the DAB decision under §

7462 or the VA's grievance procedure under § 7463.  If the former, Defendants

have waived their sovereign immunity and the Court has subject matter jurisdiction; if the latter, Defendants have not waived their sovereign immunity and the Court does not have subject matter jurisdiction.

Plaintiff cannot invoke the sovereign immunity waiver in § 7462 because her complaint does not allege that the DAB decision harmed her or that she is appealing the DAB's determination that it lacked jurisdiction based on the absence of a question of professional conduct or competence. In fact, in her appeal letter, she states that she agrees with the DAB's decision. (Doc. 35-4 at 3). Plaintiff instead complains only of actions taken by the pre-termination investigators, Tholt, Dr. Hayman, and Turner pursuant to the VA's grievance procedure under § 7463.

Plaintiff seems to be under the impression that in dismissing Plaintiff's case, the DAB determined that the VA's decision was not supported by the evidence, and therefore the VA should have reinstated her and provided her backpay following the DAB's decision. (*See* Doc. 35 at 16 ("Once the DAB issued its decision, which gutted the VA's case against [Plaintiff], the VA should have reinstated" her.)). This is not the case. The DAB only made a jurisdictional determination of "whether the case was properly before" it under 38 U.S.C. § 7462(c)(1). (Doc. 35-2 at 1 (the DAB "concluded it lacked jurisdiction to hear [her] appeal" because "the charge upon which the major adverse action was based *did not involve* a question of" professional conduct or competence) (emphasis

added)). This characterization is supported by the fact that the DAB did not

sustain or dismiss any of the charges against Plaintiff, as it would be required to do

under § 7462(c)(2). Thus, the effect of this decision was not to render the bases for

the VA's termination of Plaintiff meritless but rather to notify Plaintiff that she

must use the VA's internal grievance process under § 7463. Because Plaintiff's

case was resolved under § 7463 and because Plaintiff does not complain of the

DAB's jurisdictional dismissal of her case, the Court does not have jurisdiction

under § 7462.

C.   *Court's Authority to Review Actions of Administrative Agencies and to Grant Injunctive Relief Against Federal Officials*

Plaintiff also asserts the Court has jurisdiction under the Court's "authority

to review actions of administrative agencies of the government of the United

States, and to grant injunctive relief against officials of federal agencies." (Doc. 29

at 4). Plaintiff does not provide the basis for this authority. Section 7462(f)(2) and

the Administrative Procedure Act, 5 U.S.C. § 706, both contain language allowing

the Court to review agency actions and grant injunctive relief against federal

officials, as well as language mirroring Plaintiff's requested relief, (Doc. 29 at 18-

19).[3] The Court already has rejected § 7462 as the basis for jurisdiction. To the

---

[3] 5 U.S.C. 706 of the APA states: "To the extent necessary to a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

extent Plaintiff invokes the APA, the Court will address whether jurisdiction exists in the next section.

### D.   Preclusion of Federal Law Claims by the VBA

Having determined that Plaintiff's claims fall under § 7463, which does not waive sovereign immunity, Plaintiff must show jurisdiction under 28 U.S.C. § 1331. The Court finds the VBA precludes federal question jurisdiction, and dismissal is proper.

28 U.S.C. § 1331 generally grants federal question jurisdiction to federal courts over constitutional and statutory claims. Congress can preclude this jurisdiction expressly or implicitly. To implicitly preclude jurisdiction, Congress's intent to do so must be "fairly discernible in the statutory scheme." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 9-10 (2012). For instance, CSRA's comprehensive remedial scheme made it "fairly discernible" that Congress intended CSRA-covered federal employees challenging adverse "personnel actions" to use only the

---

law ... without observance of procedure required by law; [or] unsupported by substantial evidence in a case[.]"

38 U.S.C. § 7462(f) states: "(1) A section 7401(1) employee adversely affected by a final order or decision of a Disciplinary Appeals Board (as reviewed by the Secretary) may obtain judicial review of the order or decision. (2) In any case in which judicial review is sought under this subsection, the court shall review the record and hold unlawful and set aside any agency action, finding, or conclusion found to be— (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) obtained without procedures required by law, rule, or regulation having been followed; or (C) unsupported by substantial evidence."

administrative and judicial review mechanisms prescribed by CSRA. *Id.* at 11-12

(discussing *United States v. Fausto*, 484 U.S. 439, 443 (1988)). Thus, a CSRA

employee challenging, for example, their discharge, can appeal their discharge to

an administrative review board and then to the Federal Circuit, as outlined in

CSRA; they cannot seek any "additional avenue[s] of review in district court." *Id.*

at 12. The Ninth Circuit has expressly applied this rule to deny jurisdiction in

CSRA cases invoking the APA, FTCA, and U.S. Constitution for damages and

injunctive relief. *Saul v. United States*, 928 F.2d 829, 838, 843 (9th Cir. 1991)

(constitutional claims); *Veit v. Heckler*, 746 F.2d 508, 51a (9th Cir. 1984) (APA

claims); *Orsay, v. U.S. Dept. of Justice*, 289 F.3d 1125, 1131-32 (9th Cir. 2002),

*abrogated on other grounds by Millbrook v. United States*, 569 U.S. 50 (2013).

(FTCA claims).

Relying on CSRA caselaw, the Ninth Circuit concluded the VBA also is a

comprehensive remedial scheme that forecloses judicial review for VA employees

challenging adverse actions by the VA when the statute does not expressly provide

for one. *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1067 (9th Cir. 2008)

(relying on *Fausto*, 484 U.S. at 453). At least four other circuits have held the

same. *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1027 (11th Cir. 2021)

("With this entire statutory structure in mind, we conclude that § 7463's silence

regarding judicial review and its limitation of when Disciplinary Appeals Board

review is available 'displays a clear congressional intent to deny the excluded employees the protections of [§ 7462]—including judicial review—for personnel action covered by [§ 7463].'"); *Fligiel v. Samson*, 440 F.3d 747, 752 (6th Cir. 2006); *Pathak v. Dep't of Veterans Affs.*, 274 F.3d 28, 32 (1st Cir. 2001); *Tompkins v. U.S. Dep't of Veterans Affs.*, 16 F.4th 733, 742 (10th Cir. 2021). Thus, like CSRA, the VBA precludes claims by aggrieved employees challenging adverse actions taken by the VA under the APA, the FTCA, and the constitution for damages and equitable relief when the VBA does not provide for judicial review. *E.g. Weber*, 521 F.3d at 1067 (holding that the VBA precluded judicial review for APA claims); *Goldstein v. United States*, 128 F. App'x 611 (9th Cir. 2005) (same for FTCA claims, cited for persuasive value); *Smith v. U.S. Veterans Admin.*, 996 F.2d 1227 (9th Cir. 1993) (published in a table, cited for persuasive value) (same for FTCA and *Bivens* claims).[4]

Two exceptions exist to the preclusive effect of a comprehensive remedial statute like the VBA. First, an aggrieved employee may sue for equitable relief for alleged constitutional violations if they were not afforded any other administrative or judicial remedies. *Webster v. Doe*, 486 U.S. 592 (1988); *Am. Fed'n of Gov't*

---

[4] The Court acknowledges Plaintiff's argument that the Court should not rely on *Goldstein* to conclude that the VBA precludes Plaintiff's FTCA claims because it is unpublished and has not been cited by another court. (Doc. 35 at 18). However, the Court finds its logic tracks with the caselaw on CSRA and *Weber*, and therefore has persuasive value. The Court applies the same reasoning to *Smith*, which also is considered unpublished because it was only listed in the Federal Reporter's table.

*Emps. Local 1 v. Stone*, 502 F.3d 1027 (9th Cir. 2007). For instance, in *American Federation*, the court allowed a probationary TSA employee's constitutional law challenge to his termination because he could not even reply to his termination notice, let alone bring an administrative appeal or sue in federal court. 502 F.3d at 1031, 1036-37.

Importantly, *American Federation* distinguished its holding (and application of *Webster*) from the holdings in *Saul* and cases in other circuits, where plaintiffs had other administrative or judicial remedies. 502 F.3d at 1037-38. For example, in *Saul*, CSRA barred the plaintiff's constitutional claims because she could have pursued them with the Office of Special Counsel or initiated grievance procedures pursuant to her collective bargaining agreement. 928 F.2d at 835.

The other exception to the VBA's preclusion rule is when the complained-of conduct is taken outside the scope of an "adverse action." *See Collins v. Bender*, 195 F.3d 1076, 1080 (9th Cir. 1999) (discussing whether the complained-of action was connected with, or merely tangential to, a "personnel action" under CSRA). For instance, in *Orsay*, the Ninth Circuit allowed assault and intentional infliction of emotional distress claims by former U.S. Marshals against their supervisor who allegedly pointed his gun at them because such conduct was outside the scope of any kind "personnel action" contemplated by CSRA. *Orsay*, 289 F.3d at 1131. In contrast, *Orsay* barred the plaintiffs' tort claim against other U.S. Marshal Service

officials who punished that supervisor because "the supposedly minimal punishment" the officials took against the supervisor that the plaintiffs complained of was a "'disciplinary or corrective action,' one of CSRA's categories of 'personnel action.'" *Id.* at 1132 (citing 5 U.S.C. § 2302(a)(2)(A)(iii)). That the officials' disciplinary action was somehow unfair or retaliatory was irrelevant to the court's decision.

Here, neither exception applies, so the VBA divests the Court of jurisdiction and precludes Plaintiff's claims. As to the *American Federation* exception, Plaintiff had extensive pre- and post-termination remedies under § 7643: she was able to respond to the initial notice of termination from Tholt in writing with affidavits and other documentary evidence, have her response reviewed and the charges resolved by Dr. Hayman, appeal the ultimate resolution of the charges to an impartial examiner (Turner), and have the impartial examiner's findings and recommendations reviewed by another higher official (Gigliotti). 38 U.S.C. § 7463(c). As the exhibits show, Plaintiff was not limited to a suit in district court to challenge her termination, like in *American Federation*.

Plaintiff's invocation of *American Federation* in arguing that the Court has jurisdiction over her constitutional claims ignores the case's discussion of its limitations. As explained, the Ninth Circuit expressly distinguished *American Federation*, where the plaintiff had no administrative or judicial options to

challenge his termination, from its past rulings and those of other circuits, where
plaintiffs had other avenues of recourse.  Given the availability of administrative
remedies here, the Court cannot apply *American Federation*.

Regarding the second exception, the conduct Plaintiff complains of was
taken within the course of an adverse action under the VBA.  As explained,
discharge is one type of adverse action under the VBA.  38 U.S.C. § 7461(c)(2)-
(3).  The actions she complained of—the inadequate investigations by Officer
Norris, the OIG, and the AIB; Tholt's recommendation for termination despite
AIB's decision not to recommend termination; and Turner's alleged failure to
abide by the grievance procedures in § 7463—either concern the events leading up
to her discharge or the events evaluating her discharge.  Thus, unlike the actions
taken by the plaintiffs' supervisor in *Orsay*, which were obviously tangential to
any employment decisions, those taken by Defendants here fall squarely within the
scope of a discharge, and thus an adverse action, under the VBA.  Since neither
exception to the general preclusion rule applies, the Court concludes that it lacks
jurisdiction to consider Counts I, II, III, and VI.[5]  Because the Court concluded it

---

[5] The parties disagree over whether Plaintiff asserts a *Bivens* claim for damages.  Though the
dispute is ultimately irrelevant given the Court's holding that a constitutional law claim for
damages or an equitable remedy are precluded by the VBA, the Court will briefly address the
confusion.  From reading the complaint and Plaintiff's assertion in her response that she did not
state a *Bivens* claim, the Court deduces that Plaintiff's damages request was based on her state
constitutional claim, for which she could have received damages, but which the Court dismissed
for lack of jurisdiction.  (Doc. 35 at 22).  To the extent this is the case, the Court disregards

does not have jurisdiction over Plaintiff's FTCA claims, it will not discuss the impact of Plaintiff failing to exhaust her administrative remedies prior to filing suit.

On its face, this outcome may seem unfair. However, the Supreme Court has been clear that the unavailability of judicial review due to a comprehensive remedial scheme is "not an uninformative consequence of the limited scope of the statute, but rather [the] manifestation of a considered congressional judgment that [in certain contexts, certain federal employees] should not have statutory entitlement to review for adverse action of the type governed" by the statute. *Fausto*, 484 U.S. at 448-49. *See also Lee v. Hughes*, 145 F.3d 1272, 1276 (11th Cir. 1998) (citing *Fausto*, 484 U.S. at 447) ("In light of Congress's deliberate exclusion of certain employees from the protections of the CSRA and this country's long-respected separation of powers doctrine, courts should be hesitant to provide an aggrieved plaintiff with a remedy where Congress intentionally has withheld one.").

E.   *Colorable Constitutional Claim*

Even if Plaintiff's federal constitutional claim is not precluded by the VBA, dismissal is proper because Plaintiff has not demonstrated that her claim is

---

Defendants' *Bivens* arguments. To the extent Plaintiff asserts a *Bivens* claim, the Court finds it is precluded by the VBA for the reasons stated.

colorable. Asserting a colorable constitutional claim is a prerequisite for the Court's jurisdiction. *Udd v. Massanari*, 245 F.3d 1096, 1099 (9th Cir. 2001). To assess whether a plaintiff has asserted a colorable due process claim, the Court asks (1) whether the plaintiff has an interest protected by due process, (2) what process was due, and (3) whether the plaintiff was provided such process. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541-42 (1985). Here, Plaintiff has a protected interest in maintaining her public employment. *Id.* at 541 ("While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards."). The only disputed question is what process was due, and whether Defendants' discharge procedures provided such process.

"When a public employee is terminated for cause, [they] are entitled to 'oral or written notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story.'" *Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001) (quoting *Loudermill*, 470 U.S. at 546). "An employee is only entitled to a 'very limited hearing prior to his termination,' *Gilbert v. Homar*, 520 U.S. 924, 929 (1997), which 'need not be elaborate,' *Loudermill*, 470 U.S. at 545." *Id.*

22

Plaintiff was provided with the constitutionally required procedures and therefore has not asserted a colorable constitutional claim. She was notified of the bases for her termination and the supporting evidence in the letters from Tholt and Dr. Hayman (Docs. 34-2; 35-1), and was given an opportunity to respond in writing (Doc. 35-4) and orally at the hearing. This is the minimum due process requires, regardless of the additional procedures afforded under the VBA.

Thus, the Court does not have jurisdiction for Plaintiff's due process claim.

F.    *Remaining State Law Claim*

As for Plaintiff's common law tort claims for which she argued the Court had supplemental jurisdiction—defamation (Count IV) and negligent/intentional infliction of emotional distress (Count V)—the Court declines to exercise such jurisdiction. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction." Plaintiff's remaining claims are brought under state law, and Plaintiff has not asserted diversity jurisdiction. As the Court has dismissed all Plaintiff's federal claims for which jurisdiction was premised on, the Court declines to exercise supplemental jurisdiction on Counts IV and V and dismisses them without prejudice.

//

//

## IV.   Conclusion

For these reasons, the Court finds that it lacks jurisdiction over Plaintiff's case and dismissal is proper.  IT IS SO ORDERED that Defendants United States Department of Veterans Affairs and Secretary of the Department of Veterans Affairs Denis Richard McDonough, *et al.*'s Motion to Dismiss Plaintiff Jennifer Kransky's Second Amended Complaint (Doc. 31) is GRANTED and Defendants first Motion to Dismiss (Doc. 14) is DENIED as moot.  IT IS FURTHER ORDERED that Plaintiff's case is dismissed without prejudice.

The Clerk of Court is directed to enter judgment and close this matter.

DATED this ___11th___ day of September, 2023.

SUSAN P. WATTERS
United States District Judge